**Shafi ULLAH, Plaintiff,**

v.

**CANION SHIPPING COMPANY, LTD., Defendant.**

**Civ. No. H–82–668.**

United States District Court, D. Maryland.

June 22, 1984.

---

Paul D. Bekman, Michael D. Berman, Kaplan, Heyman, Greenberg, Engelman & Belgrad, Baltimore, Md., Phillips L. Goldsborough, III, Smith, Somerville & Case, Baltimore, Md., John Bashaar, Towson, Md., for plaintiff.

Manfred W. Leckszas, John M. Kinsey, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for defendant.

**554**

ALEXANDER HARVEY, II, District Judge.

A Pakistani seaman has here sued a Greek shipowner seeking to recover damages for personal injuries sustained by him while on board defendant's ship. The primary question before the Court is whether Greek or American law should be applied to the claims asserted by this foreign seaman.

Plaintiff's injuries were sustained on July 20, 1980, while the M/V CONCORDIA ION was docked in the Port of Baltimore. His three-count complaint has been brought under the Jones Act, 46 U.S.C. Section 688 and under the general maritime law of the United States.[1] The complaint named three defendants, Canion Shipping Company, Ltd. (hereinafter "Canion"), the owner of the vessel, Kratigos Shipping Company (hereinafter "Kratigos"), a Greek company which managed and operated the vessel, and Concordia Lines (hereinafter "Idaho"),[2] the time charterer of the vessel on the day that plaintiff sustained his injury. Motions for summary judgment filed by Kratigos and Idaho have previously been granted by this Court,[3] and the sole remaining defendant is therefore the shipowner Canion.

Canion is a Liberian corporation, the majority stock of which is owned by Greek citizens.[4] Presently before the Court is a motion filed by defendant Canion to dismiss the complaint or for summary judgment. Canion asserts that the pertinent facts here do not support the exercise by this Court of jurisdiction over it under the legal standards applicable to the Jones Act and the general maritime law. In the alternative, it is contended that this action should be dismissed on the basis of the doctrine of *forum non conveniens*. Since this action was filed some two years ago, the parties have engaged in extensive discovery of the jurisdictional facts pertinent to the Court's determination of the issues raised by the pending motion. Voluminous memoranda and numerous exhibits have been filed by the parties in support of and in opposition to the motion, and oral argument has been heard in open Court. For the reasons to be stated herein, the motion of defendant Canion for summary judgment will be granted.

I

*Choice of Law*

There are many reported decisions which have considered the question whether United States admiralty law and in particular the Jones Act should be applied in a suit brought in federal court by one foreign party against another. In a triology of cases handed down over a period of some 17 years, the Supreme Court has outlined and discussed the factors which a federal court should consider in determining in a particular case whether there are sufficient American contacts to require the choice that United States law should be applied. In the seminal case of *Lauritzen v. Larsen*, 345 U.S. 571, 583–91, 73 S.Ct. 921, 928–932, 97 L.Ed. 1254 (1953), the Supreme Court listed seven separate factors to be considered by a court in determining whether the Jones Act should be applied in a case such as this one. *Lauritzen* involved a claim asserted in federal court by a Danish seaman against the Danish owner of a Danish vessel for injuries suffered while the plaintiff was aboard ship in Havana, Cuba. The seven factors are as follows:

1. The place of the wrongful act;

1. The complaint also contains a third cause of action in which plaintiff seeks maintenance and cure.

2. The correct name of this defendant is D/S A/S Idaho, a Norwegian entity which was engaged in a liner service known as Concordia Lines.

3. Since neither Kratigos (the Greek manager of the vessel) nor Idaho (the Norwegian charterer of the vessel) was the employer of plaintiff at the time of his injury, they were not subject to suit under the Jones Act. Indeed, plaintiff did not oppose the granting of summary judgment in favor of these two defendants.

4. A Swiss citizen was the minority shareholder of the corporation.

2. The law of the ship's flag;
3. The allegiance or domicile of the injured seaman;
4. The allegiance of the defendant shipowner;
5. The place of the contract (*i.e.*, where the shipping articles were signed);
6. The inaccessibility of a foreign forum; and
7. The law of the forum.

After considering the facts of that case, the Supreme Court in *Lauritzen* held that Danish law and not the Jones Act should govern that dispute.

Some six years later, the Supreme Court in *Romero v. International Terminal Operating Company*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), had before it a suit brought by a Spanish seaman against a Spanish shipowner for injuries sustained in New York while plaintiff was aboard a Spanish vessel. The Court reaffirmed its earlier decision and further held that the principles of *Lauritzen* should be applied not only to a claim asserted under the Jones Act, but also to one arising under general maritime law. Emphasizing the need for a federal court to consider the relevant interests of foreign nations in the regulation of maritime commerce, the Supreme Court in *Romero* concluded that American law should not be applied to the claims asserted in that case.

The third decision of the Supreme Court which considered a choice of law question similar to the one presented before this Court is *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). That case involved a claim brought under the Jones Act by a Greek seaman injured on a Greek vessel in an American port. In discussing the seven factors listed in *Lauritzen*, Mr. Justice Douglas observed that the *Lauritzen* list was not intended to be exhaustive and that the test should not be applied in a mechanical manner. An eighth factor was then added for consideration by a trial court in deciding a question of this sort, namely the shipown-

er's "base of operations." In *Rhoditis*, the vessel was owned by a Greek corporation which had a base of operations in New York. More than 95% of the stock of the Greek corporation was owned by a Greek citizen who had been a United States domiciliary for more than 20 years, living in Connecticut and managing the corporation out of New York. Distinguishing these facts from those involved in *Lauritzen*, the Supreme Court held in *Rhoditis* that the Jones Act should be applied in that case.

▪ When the eight factors outlined in *Lauritzen* and *Rhoditis* are considered here, it is apparent that the preponderance of them quite clearly points to the application of Greek law for the resolution of this dispute. Bearing in mind that the test is not a mechanical one, this Court would first note that the most significant factor to be considered in cases involving a maritime tort has been said to be the law of the flag. *Lauritzen v. Larsen, supra*, 345 U.S. 585, 73 S.Ct. 929; *Morewitz v. Andros Compania Maritima, S.A.*, 614 F.2d 379, 383 (4th Cir.1980); *Southern Cross Steamship Co. v. Firipis*, 285 F.2d 651, 653 (4th Cir.1960). In this case Greek law is the law of the flag. A vessel of Greek registry, the CONCORDIA ION was engaged in worldwide maritime trade. Most of its crewmen were citizens of Greece while some were citizens of Pakistan, Egypt, Chile, Tanzania and Portugal.

The record here next discloses that the contacts which this dispute has with the United States are minimal. The injured plaintiff is a citizen of Pakistan.[5] The shipowner is a Liberian corporation, more than 80% of the shares of which are owned by Greek nationals who do not reside in the United States. The contract of employment between plaintiff and Canion was signed in Spain and designated Greek law to be applied for the resolution of disputes. The collective bargaining agreement in question is known as the Greek Collective Agreement. An alternate forum is accessible inasmuch as the Courts of Greece are

---

**5.** Plaintiff was domiciled in Peshawar, Pakistan.

available for the adjudication of this dispute.[6] Defendant Canion does not have a base of operations in the United States. It never employed persons, owned property or maintained offices in this country, and no citizen or resident of the United States has a financial interest in the CONCORDIA ION.

In sum, the only two of the eight *Lauritzen-Rhoditis* factors which favor plaintiff's position are the relatively insignificant ones that the injury occurred in Maryland and that this Court will be applying federal choice of law rules. As the Fourth Circuit pointed out in *Dracos v. Hellenic Lines, Ltd.*, 705 F.2d 1392, 1395 (4th Cir.1983), these two factors are relatively unimportant in a maritime context, inasmuch as the nature of maritime commerce is such that a vessel will inevitably have some contacts with many different nations.

Relying on *Zarikos v. Intermaritime Transportation Ltd.*, 1981 A.M.C. 1766 (D.Md.1980), plaintiff argues that a ninth factor should be considered by the Court in this case, namely, the business contacts which defendant Canion had with the United States. Plaintiff points out that the Supreme Court's opinion in *Rhoditis*, in stating that a court should as an additional eighth factor consider the shipowner's base of operations, noted that there may well be other factors. 398 U.S. at 309, 90 S.Ct. at 1734. In *Dracos*, the Fourth Circuit cited *Rhoditis* and observed that in a case of this sort, "the substantial and continuing American contacts of [the shipowner] had to be considered." 705 F.2d at 1395.

In attaching great importance in what is perceived to be a ninth *Lauritzen-Rhoditis* factor, plaintiff ignores the historical development of the legal principles to be applied in a case such as this one. Plaintiff would have the tail wag the dog when he argues that Canion had substantial and continuing contacts with the United States and that therefore the Jones Act should be applied

in this case. *Lauritzen* and *Romero* outlined seven factors to be considered by a Court when presented by a choice of law question such as this one. *Rhoditis* added an eighth factor, namely the shipowner's base of operations. Consideration of the contacts which a defendant shipowner might have with this country was suggested by Mr. Justice Douglas only insofar as such facts might relate to the maintenance by the foreign shipowner of a base of operations in the United States. In *Rhoditis*, the shipowner had a base of operations in New York, was engaged in an extensive business operation in this country, and was earning income from cargo originating or terminating in the United States. 398 U.S. at 310, 90 S.Ct. at 1734. None of those facts are present here. In this case, Canion does not have a base of operations in this country and does not "engage in an extensive business operation" in the United States. Moreover, the money earned by Canion was derived from the hire it received under charters to other foreign shipping companies and not from the freight paid for the transporting of cargo on its vessel. Accordingly, the contacts which Canion's ship might have had with American ports, the so-called ninth factor, is a relatively insignificant one to be accorded little weight in this case under the flexible balancing test which the Court must apply.

In suggesting that this Court should place primary weight on the so-called ninth *Rhoditis* factor, plaintiff is in effect asking the Court to weigh Canion's contacts with the United States as it would in a diversity case in which the Court might be called upon to decide whether a nonresident defendant's contacts were sufficient for the exercise of long arm jurisdiction. *See Worldwide Volkswagen v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–568, 62 L.Ed.2d 490 (1980). However, the two tests are quite different. In a case such as this one, the Court is dealing with international commerce. In its seminal decision,

---

**6.** Under Greek law, plaintiff's claim against Canion would not be barred by limitations. In any event, defendant Canion has agreed that it will waive any jurisdictional objections or the running of any statute of limitations and that it will enter its appearance in a Greek court and defend on its merits a suit brought by plaintiff.

*Lauritzen*, the Supreme Court rejected an argument similar to the one advanced by plaintiff here. 345 U.S. at pages 581–582, 73 S.Ct. at page 928, the Court said the following:

Respondent places great stress upon the assertion that petitioner's commerce and contacts with the ports of the United States are frequent and regular, as the basis for applying our statutes to incidents aboard his ships. But the virtue and utility of seaborne commerce lies in its frequent and important contacts with more than one country. If, to serve some immediate interest, the courts of each were to exploit every such contact to the limit of its power, it is not difficult to see that a multiplicity of conflicting and overlapping burdens would blight international carriage by sea. Hence, courts of this and other commercial nations have generally deferred to a non-national or international maritime law of impressive maturity and universality. It has the force of law, not from extra-territorial reach of national laws, nor from abdication of its sovereign powers by any nation, but from acceptance by common consent of civilized communities of rules designed to foster amicable and workable commercial relations.

These principles were reaffirmed by the Supreme Court in *Romero v. International Terminal Operating Co., supra* 358 U.S. at 381–384, 79 S.Ct. at 485–486.

Quite obviously every vessel engaged in international commerce has contacts with many different nations. Cargo of substantial value is loaded and unloaded at ports all over the world. Were the price paid for transporting the cargo to be an important factor in determining whether the law of a particular nation was to be applied to a dispute, each nation would be free to apply its own law to a case involving foreign parties whatever the other pertinent facts might indicate. In dealing with international commerce, a federal court cannot be unmindful of the necessity for mutual forbearance if retaliations are to be avoided. *Lauritzen*, 345 U.S. at 582, 73 S.Ct. at 928.

As the Supreme Court noted, "any contact which we hold sufficient to warrant application of our law to a foreign transaction will logically be as strong a warrant for a foreign country to apply its law to an American transaction." *Id.*

Plaintiff's reliance on Judge Northrop's opinion in *Zarikos* is misplaced. Quite different facts were involved there. Both a shipowner and a bareboat charterer were defendants in that case and these two defendants were related. In his opinion, Judge Northrop determined that the Jones Act should be applied to both defendants. Noting that the vessel was neither owned nor operated by Greeks, Judge Northrop found that there was little connection with the alternate forum, namely Greece.

In this case, the vessel was time-chartered, and the time charterer, Idaho, concededly not plaintiff's employer, has been dismissed as a defendant. The majority stockholders in this case are Greek, the ship flew the Greek flag, and a Greek forum is available. In view of these very substantial factors pointing away from the application of American law in this case, this Court will give little weight to the fact that, during the time that Canion owned the vessel, 20% of its calls were made to ports in the United States. Even less weight will be given to the fact that substantial sums were paid as freight for loading and unloading Idaho's cargoes in Baltimore and in other ports. Freight paid to the charterer was not income to Canion, which received hire payments whatever cargo was carried and wherever the vessel went. Since the vessel was time-chartered, the decision as to the ports of call for its voyages was made by Idaho, the time charterer. But Idaho is no longer a party to this action. Whether or not the amount of freight paid would be relevant in deciding if the Jones Act should be applied to a charterer-employer, it has little relevance insofar as the shipowner itself is concerned where the vessel is subject to a time-charter. As the owner of a chartered vessel, Canion was not engaged in any particular trade of its own choosing but was obligated

to sail the vessel to those ports selected by the time-charterer.

The *Zarikos* case was decided in 1980. Much more pertinent to a decision in this case is the 1983 opinion of the Fourth Circuit's in *Dracos v. Hellenic Lines Ltd., supra.* Indeed, *Dracos* involved facts very similar to those present here, and this Court concludes that it is controlling. In *Dracos,* the Fourth Circuit affirmed the district court's conclusion that the Jones Act should not be applied to a suit between foreign parties. In his opinion, Judge Widener first noted that the plaintiff has the burden of showing such facts that would lead the court to choose American law. 705 F.2d at 1395. As in this case, the only two *Lauritzen* factors which pointed to the selection of American law were the fact that the claim had arisen while the ship was berthed in Norfolk and the fact that the decedent's widow had sued in the United States District Court for the Eastern District of Virginia. Judge Widener agreed with the district court that these two factors were relatively unimportant in a maritime context, since a ship may travel through waters governed by various nations and the nature of maritime commerce is such that a vessel will inevitably have contacts with many different nations. 705 F.2d at 1395. The two most important *Lauritzen* factors were held to be the ship's flag and the shipowner's allegiance. The district court had considered evidence of the shipowner's operations and its contacts with the United States and had found such evidence to be insufficient to show an American base of operations or substantial enough American contacts to require an application of American law. These findings were affirmed by the Fourth Circuit. 705 F.2d at 1396.

A similar result was reached in an earlier Fourth Circuit opinion. *See Morewitz v. Andros Compania Maritima, S.A.,* 614 F.2d 379 (4th Cir.1980). The facts there indicated that Greek law was the law of the flag, that the decedent was a resident of Greece, and that the base of operations of the defendant was not in the United States. The Fourth Circuit concluded that the district court committed no error of law or abuse of discretion in refusing to apply the Jones Act in that case. 614 F.2d at 383.

Similar facts are involved here as were before the Fourth Circuit in *Dracos* and *Morewitz.* Applying the principles of those cases to the facts of this case, the Court concludes that American law should not be applied. Other decisions from other circuits which support the conclusion reached by this Court in this case include *Rodriguez v. Flota Mercante Grancolombiana, S.A.,* 703 F.2d 1069 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 84, 78 L.Ed.2d 94 (1983); *Volyrakis v. M/V ISABELLE,* 668 F.2d 863, 868 (5th Cir.1982); and *DeMateos v. Texaco, Inc.,* 562 F.2d 895 (3d Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978).

*Fisher v. AGIOS NICOLAOS V,* 628 F.2d 308 (5th Cir.1980), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981), *reh. denied,* 454 U.S. 1129, 102 S.Ct. 982, 71 L.Ed.2d 117 (1981), relied upon by the plaintiff is distinguishable. The Fifth Circuit in that case concluded that the district court had not abused its discretion in balancing the various applicable factors and concluding that the Jones Act should be applied. There the plaintiff had joined the crew of the vessel in Beaumont, Texas, and the vessel's first and only activity under its owners and new operators was its voyage to the United States to load grain at Beaumont. In affirming the district judge's decision, the Fifth Circuit relied on the following facts: that at the time of the decedent's death, the vessel's entire service under ownership and all its revenues arose from a base of operations in the United States; that as of the time of the accident the vessel had been purchased primarily to service the United States grain trade; that the seaman who had been killed in an accident occurring in a United States harbor had been flown to that harbor; and that his entire service to the vessel prior to his

death was in that harbor.[7] No such facts are present in this case. The CONCORDIA ION for many years before plaintiff's accident had been engaged in worldwide trade and had called at many ports outside the United States. Plaintiff himself had signed on in Spain and had served on the CONCORDIA ION on many other voyages to other ports. Finally, as this Court has found, the defendant's base of operations was not located in the United States.

For all these reasons, this Court finds and concludes that neither the Jones Act nor the general maritime law of the United States should be applied to the claims asserted in this case by a foreign seaman against a foreign shipowner. The claims of this Pakistani seaman asserted against this Greek shipowner should be adjudicated in a Greek Court.[8]

## II

### Forum Non Conveniens

Plaintiff next argues that even if this Court determines that the law of the United States does not apply here, the Court should apply principles of the doctrine of *forum non conveniens* and exercise jurisdiction in this case. It is well established that even if foreign law may be applicable to a particular dispute, a federal court may under appropriate circumstances exercise jurisdiction over the controversy. *Szumlicz v. Norwegian America Line, Inc.*, 698 F.2d 1192 (11th Cir.1983).

The factors to be considered by a court in deciding whether or not to apply the doctrine of *forum non conveniens* were discussed by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). These principles were reaffirmed in the recent decision of the Supreme Court in *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

Although there is a presumption in favor of a retention of plaintiff's choice of forum, this presumption is weakened when the plaintiff is foreign. *Piper Aircraft Company, supra* at 255–56, 102 S.Ct. at 265–266. This Court has already determined that foreign law applies and that there is an alternative forum where plaintiff may sue defendant Canion. Plaintiff agreed when he signed his contract of employment with the defendant that any claim he might assert would be adjudicated in Greek courts pursuant to the Greek Collective Agreement. Two crewmen witnessed plaintiff's accident, one of whom resides in Greece and the other in Portugese Goa. Plaintiff himself is now residing in Pakistan, and the two witnesses whom he indicates he intends to call are also located in Pakistan. There was no official Coast Guard or police investigation of the accident conducted in the Port of Baltimore. Although plaintiff was originally treated by American doctors in Baltimore after the accident, he is presently under the care of a physician in Peshawar, Pakistan.

When these factors are weighed and considered, this Court concludes that it should not exercise jurisdiction over this controversy. Rather, this suit should go forward in the courts of Greece. The United States has no substantial connection with this litigation other than the fortuitous event that the CONCORDIA ION was located in Baltimore at the time of the accident. A federal court in this country has little interest in adjudicating a dispute between a resident of Pakistan and a Greek

7. One of the members of the three-judge panel which decided the *Fisher* case has since written that the opinion stood for little more than the affirmance of factual determinations of a district court resolving borderline facts one way. Tate, "Fisher v. Agios Nicolaos V and Choice of Law: What the Fuss Should Have Been About (Maybe)", 7 *The Maritime Lawyer* 199, 221 (Fall, 1982).

8. Relying on Article 11 of the Convention Concerning the Liability of Shipowner in Case of Sickness, Injury or Death of Seaman, 54 Stat. 1693, 1938 A.M.C. 1297, 1301 (1936), plaintiff argues that the fact that plaintiff is a Pakistani citizen residing in Pakistan is entitled to little weight. There is no merit to this contention which has not been recognized by the Supreme Court or the Fourth Circuit decisions applying the *Lauritzen-Rhoditis test.*

shipowner. Dismissal on the grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery. *Piper Aircraft Co., supra* at 250, 102 S.Ct. at 263. As the Supreme Court noted in *Piper Aircraft Co., supra,* the United States courts are already attractive to foreign plaintiffs and would become even more attractive if courts of this country did not decline to adjudicate essentially foreign litigation. 454 U.S. at 252, 102 S.Ct. at 264. The ability of federal courts in the United States to give speedy justice in matters properly before them would be substantially impaired to the prejudice of all "if they took it upon themselves also to resolve the disputes of the rest of the world." *Cruz v. Maritime Company of Philippines,* 549 F.Supp. 285, 290 (S.D.N.Y.1982), *aff'd* 702 F.2d 47 (2d Cir.1983).

■ For these reasons, this Court concludes that the doctrine of *forum non conveniens* does not bar dismissal of this action.

### III

### *Plaintiff's Request to Conduct Further Discovery*

■ Finally, plaintiff requests that if this Court is inclined to grant defendant's motion for summary judgment, plaintiff should be permitted to conduct further discovery before the Court issues its final ruling. This request will be denied.

Discovery in this case has been extensive and has taken place over a period of some two years. A very complete record has been developed for consideration by the Court of the issues presently before it. Extensive interrogatories and requests for production have been filed and answered. There have been numerous discovery disputes which have required conferences and rulings by the Court. In permitting plaintiff to fully discover facts pertinent to the choice of law issue presented in this case, the Court has liberally applied discovery rules and has consistently ruled in plain-

tiff's favor. In its Memorandum and Order of September 7, 1983, the Court granted in substantial part plaintiff's motion to compel answers to interrogatories, and also required defendants to produce additional documents. At the request of the plaintiff, the Court stayed its rulings on the motions of Kratigos and Idaho for summary judgment. These two defendants were kept in the case so that pertinent facts in their possession might be discovered by the plaintiff while they were still defendants. Plaintiff has been given every opportunity to discover all relevant facts to support his contention that American law should be applicable here.

Plaintiff asserts that most of its discovery has been directed to contacts of the CONCORDIA ION with Maryland, and plaintiff seeks to discover facts relating to the vessel's contacts with other ports. As indicated in this opinion, information of this sort has little relevance to the issues presented by the pending motion. This Court finds and concludes that the significant facts have been fully developed by discovery to date. The further discovery sought by the plaintiff is not relevant to the subject matter presently before the Court and cannot be reasonably calculated to lead to the discovery of pertinent information. Accordingly, plaintiff's request that he be permitted to conduct further discovery will be denied.

### IV

### *Conclusion*

For the reasons stated, this Court concludes that it lacks subject matter jurisdiction in this case and that it should not apply the doctrine of *forum non conveniens* to exercise jurisdiction here. Accordingly, the motion of defendant Canion for summary judgment will be granted. Plaintiff's request that he be permitted to conduct further discovery will be denied. A separate Order will be prepared by the Court entering judgment in favor of the defendants with costs.