**Jose GUTIERREZ, Plaintiff–Appellant,**

v.

**DIANA INVESTMENTS CORPORATION; Aloceans Shipping Company, Ltd., a Panamanian corporation, Defendants–Appellees.**

**No. 90–2204.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 10, 1991.

Decided Oct. 11, 1991.

Dennis M. O'Bryan (briefed), O'Bryan Law Center, Birmingham, Mich., Charles R. Lipcon, Miami, Fla., Christopher D. Kuebler (argued), Lakewood, Ohio, for plaintiff-appellant.

Paul D. Galea (briefed), Paul A. Kettunen (argued), Foster, Meadows & Ballard, Detroit, Mich., for defendants-appellees.

Before GUY, Circuit Judge, PECK, Senior Circuit Judge, and SILER, Chief District Judge.*

---

* Honorable Eugene E. Siler, Jr., Chief District Judge, United States District Court for the East- ern District of Kentucky, sitting by designation, became a Circuit Judge on September 16, 1991.

PER CURIAM.

Plaintiff, Jose Gutierrez, appeals from a summary judgment in which the district court concluded that it had no subject matter jurisdiction over plaintiff's claim. Gutierrez, an alien seaman, had sought to recover for personal injuries sustained while on board ship. Federal jurisdiction was predicated on the Jones Act, 46 U.S.C.App. § 688, and on the general maritime laws of the United States. 28 U.S.C. § 1333. Applying a choice-of-law analysis, the district court concluded that neither the Jones Act nor general admiralty and maritime law apply to the facts of this case. We agree and will affirm.

## I.

Gutierrez is a citizen of Honduras, where he resides with his wife and children. While in Honduras, he entered into a seaman's contract of service agreeing to work on the M/V ATLANTICA. The ATLANTICA is owned by the defendant, Diana Investments Corporation, a Liberian corporation. Although Diana owned the ship, plaintiff was in the direct employ of Aloceans Shipping Company, Ltd., a Panamanian corporation with its operations office in Greece. The operator of the ship was Seven Seas Maritime, Ltd., a corporation organized under the laws of England, with its principal place of business in London. No United States citizens are shareholders in any of these three foreign corporations.

Plaintiff was injured on June 8, 1987. At that time, the ATLANTICA was navigating in the territorial waters of Thunder Bay, Ontario, Canada, and was flying a Greek flag. Plaintiff received medical care in England, but his primary medical care was administered in Honduras.[1] The primary witnesses to the accident identified by the plaintiff are residents of Honduras.

It is undisputed that during the relevant period, the ATLANTICA spent 20 percent of its time in United States ports, 18 percent of which was spent on the Great Lakes.

## II.

In addressing the legal issues involved, we first note that the plaintiff has mischaracterized the actions of the district court in granting summary judgment. Plaintiff argues that the district court concluded that the Eastern District of Michigan was not a convenient forum for the litigants and, from that, erroneously jumped to the conclusion that the court lacked subject matter jurisdiction. We do not believe that to be the case. Although the written judgment entered does not specify its underlying rationale, it is clear from the oral arguments and bench opinion in the district court that Judge Gilmore concluded, as we do, that there was no subject matter jurisdiction. Defendants did make the alternative argument in the district court that the doctrine of *forum non conveniens* should apply, but the district judge did not base his decision on this doctrine.[2]

The Supreme Court has had a number of occasions to address the sometimes complicated choice-of-law issues that arise in cases involving seamen. In *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Court identified factors to be considered relevant to the choice-of-law issue:[3] (1) the place of the wrongful act, (2) the law of the flag, (3) the allegiance or domicile of the injured seaman, (4) the allegiance of the defendant shipman, (5) the place of the contract, (6) the inaccessibility of a foreign forum, and (7) the law of the forum. *Id.* at 583–92; 73 S.Ct. at 928–33.

Although the Supreme Court did not attach equal weight to each criterion, we

---

1. Plaintiff makes a very general reference in his brief on appeal to medical care received in the United States, but provides no details.

2. Defendants continue to argue convincingly on appeal the applicability of *forum non conveniens,* but we find it unnecessary to address this issue specifically.

3. Although choice-of-law issues can arise in a number of contexts, we are discussing here the situation where the choice-of-law decision results in no United States law being applicable, and there is no other basis for federal jurisdiction. It is, of course, not uncommon for United States courts to hear cases in which foreign law is applied.

need not parse *Lauritzen* in that regard. None of the seven factors favor the plaintiff, and, whether considered severally or in combination, they all counsel against jurisdiction being appropriate in a United States court.

Plaintiff's best argument is drawn from a subsequent Supreme Court decision, *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). In *Rhoditis*, Justice Douglas added an eighth element to the choice-of-law calculus. *Rhoditis* involved a claim brought under the Jones Act by a Greek seaman injured on a Greek ship in a United States port. In concluding that jurisdiction in the United States was appropriate, the Court found that the ship on which the injury occurred generated all or most of its income from cargo that either originated or terminated in this country. The Court also found that the largest office of the defendant corporation was in New York, which was the "base of operation" for the corporation. The Court further found that 95 percent of the stock of the defendant corporation was owned by a Greek citizen who lived in the United States and had become a permanent resident alien. Thus, despite the fact that the law of the flag was Greek, the defendant was a Greek corporation, the plaintiff was a Greek domicile and the place of contracting was Greece, the Court concluded that defendant's "base of operations" established "substantial and continuing contacts that this alien owner has with this country." *Id.* at 310, 90 S.Ct. at 1734.

It cannot be gainsaid that the facts here are considerably different than in *Rhoditis*. To start with, the injury itself did not take place in a United States port or even in United States waters. As far as having substantial contacts with the United States is concerned, we do not purport to reduce this test to a percentage formula. All we decide here is that, where none of the seven *Lauritzen* factors weigh in favor of the plaintiff, the fact that this ship did 20 percent of its business in United States ports will not tip the scales in favor of jurisdiction.[4]

Defendants also cite to a number of other cases where, even when the injury complained of occurred in a United States port, jurisdiction was held to be lacking.[5] Although we find these cases generally relevant, we find no need to discuss them.

AFFIRMED.

---

**4.** We can conceive, however, of a situation in which 20 percent of a shipowner's business being conducted through a United States port *in combination with other factors,* such as were present in *Rhoditis,* might make for a much closer case on the jurisdictional issue.

**5.** *See, e.g., Ullah v. Canion Shipping Co.,* 589 F.Supp. 552 (D.Md.1984), *aff'd,* 755 F.2d 1116 (4th Cir.1985).