Joseph **HARUNA** and James **K.D. Oppong, Plaintiffs,**

v.

**M/V STAR B in rem, Slebent Shipping, Co., and Baru Kaha, Inc. in personam, Defendants.**

No. C.A. 2:98–1412–23.

United States District Court, D. South Carolina, Charleston Division.

Dec. 22, 1998.

S. Scott Bluestein of Raley & Bluestein, T. Keith Marshall, Charleston, SC, for Plaintiffs.

Douglas M. Muller of Moore & Van Allen, Charles, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court upon motions by both parties. For the following reasons, Plaintiffs' motion to void the wage settlement is denied; Defendants' motion to dismiss for *forum non conveniens* is granted.

## I. BACKGROUND

On May 14, 1998, both plaintiffs were injured while aboard the M/V STAR B docked at the port of Charleston. In an attempt to comply with a U.S. Coast Guard inspection and citation, the plaintiffs tested a faulty lifeboat. The lifeboat fell during the test, injured the plaintiffs, and resulted in the death of another seaman not party to this action. Shortly after the incident, the plaintiffs filed this *in rem* action asserting numerous claims under the Jones Act, general maritime law, and wage statutes.

## II. PLAINTIFFS' MOTION TO VOID SETTLEMENT

The facts surrounding the May 22, 1998 settlements actually encompass two hand-to-hand cash payments. First, on May 22, 1998, each plaintiff (through their above-named counsel as powers of attorney) signed a release of all wage claims in exchange for consideration in the amount of Two Thousand Six Hundred and Twenty–Five and no/100 Dollars ($2,625.00). The underlying bases for the plaintiffs' wage claims were that the defendant employer improperly deducted the cost of airfare to the port of call from the plaintiffs' wages [1] and that a second contract at a lower monthly wage was forced upon the plaintiffs while at sea. The Two Thousand Six Hundred and Twenty–Five and no/100 Dollars ($2,625.00) payment received by each plaintiff in return for the release included the cost of the airfare, the difference in the monthly contract amounts, and a forty percent attorney fee. Second, in order to pay the plaintiffs their wage balances, the master of the vessel reviewed the wage accounts and paid Oppong and Haruna Two Thousand Six Hundred and Fifty–Three and no/100 Dollars ($2,653.00) and Two Thousand and Thirty–Nine and no/100 Dollars ($2,039.00), respectively, for wage balances due.

The plaintiffs' main contention is that at the time of the settlement a large portion of the wages deemed paid by the *master, and thus not included in the wage* due calculation, had not been so paid. The master had promised and the wage accounts indicated that certain wages had been wired to the families of the seamen. In fact, as of the date of the settlement, the wages had not been so wired. Neither plaintiffs nor counsel for the defendants were aware of the failure to wire those wages at the time of the settlement.

Based on the policy that favors protecting the rights of seamen, the Supreme Court has strongly emphasized that a seaman's release or settlement of his rights is subject to careful scrutiny by the court. *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942). The shipowner has the burden of proof in establishing the validity of the seaman's release. The shipowner must show that the seaman's release "was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." *Id.* at 248, 63 S.Ct. 246. When determining whether a settlement should be rescinded, the court looks to see whether the parties have negotiated at arms length and in apparent good faith, whether the competence of counsel or the adequacy of medical or legal advice is questioned, and whether there is any appearance of taint or fraud, deception, coercion, or overreaching in the negotiations eventuating in the settlement. *Borne v. A & P Boat Rentals,* 780 F.2d 1254, 1257 (5th Cir. 1986).

Plaintiffs attack the release on the grounds that it was fraudulently executed. They contend that they relied upon the master's representation that the wages,

---

1. Plaintiffs were required to work two months without pay to repay the cost of the airfare.

which amounted approximately to an additional Two Thousand and no/100 Dollars ($2000.00), had in fact been wired to their families in agreeing to settle their wage claims. While plaintiffs argue they were "tricked," there is no support for such fraud or deception. Both plaintiffs had appropriate legal advice concerning the release. The fact that their counsel signed in their names as power of attorney is quite unlike the situation where a seaman is persuaded without advice of counsel to sign a release. Nothing indicates that the master who paid over what he believed to be the wage balance due or his attorney knew that those wages had not been wired as indicated on the wage account forms.

Plaintiffs also assert that the consideration for the release included those wages allegedly wired home. However, the release only refers to the cash payment as consideration. The pertinent language in the release states:

> That the undersigned, in consideration of the sum of Two Thousand Six Hundred and Twenty–Five and no/100 Dollars ($2,625.00) to him in hand paid, ...

> Payee understands and agrees that the settlement evidenced by this Release, and the consideration being paid hereunder, is inclusive of any and all wage payment obligations of the payers from the start of Payees' employment with Payers until May 20, 1998.

The settlement expressly designates the Two Thousand Six Hundred and Twenty–Five and no/100 Dollars ($2,625.00) as the consideration for the release; the release clearly includes all wage payment obligations. The above release bars any wage claim for the delay in the wiring of the wages.

Since the filing of this motion, the defendants have attempted to correct the over-

sight. Further discovery has also revealed that the plaintiffs signed a consent to charge the airfare to their wages. As result of the settlement, the plaintiffs have actually received a windfall. Plaintiffs' attack on the wage release is an attempt to require this court to retain jurisdiction regardless of *forum non conveniens* considerations.[2] The motion to void the settlement is denied.

### III. DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS

■ Article III of the United States Constitution grants jurisdiction to federal courts over admiralty cases between foreign parties. The issue of jurisdiction in such cases is one of unqualified discretion. *Canada Malting Co. v. Paterson Steamships*, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932). "[T]he court will not take cognizance of the case if justice would be as well done by remitting the parties to their home forum." *Id.* at 420, 52 S.Ct. 413 (citing *Langnes v. Green*, 282 U.S. 531, 544, 51 S.Ct. 243, 75 L.Ed. 520 (1931)). "[A]n admiralty court is inclined to retain jurisdiction as between foreigners when ... it is necessary to prevent a failure of justice, or when the rights of the parties would be thereby best promoted." *Gkiafis v. S. S. Yiosonas*, 387 F.2d 460, 461 (4th Cir.1967) (quoting *Heredia v. Davies*, 12 F.2d 500, 501 (4th Cir.1926)).

In a trilogy of cases, the Supreme Court also decided principles and factors relevant to the determination of whether there are sufficient American contacts to justify the application of U.S. law. In the seminal case of *Lauritzen v. Larsen*, 345 U.S. 571, 583–91, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Supreme Court used seven factors [3] to determine that Danish law, not the Jones

---

**2.** A federal court's jurisdiction over wage claims is basically mandatory, and would result in retention of the entire case regardless of *forum non conveniens* issues. *See Dutta v. Clan Grahan*, 528 F.2d 1258, 1260 (4th Cir. 1975) (holding that because the court had mandatory jurisdiction over a wage claim, the

court should take jurisdiction over personal injury and maintenance and cure claims).

**3.** The seven factors are as follows:
  (1) The place of the wrongful act;
  (2) The law of the ship's flag;
  (3) The allegiance or domicile of the injured seaman;

Act, should govern a suit filed in the United States by a Danish seaman against a Danish owner of a Danish vessel for injuries suffered while the plaintiff was aboard ship in Havana, Cuba. In *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the Supreme Court extended *Lauritzen* to claims under the general maritime law. The third case, *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), added another factor into the mix— "the shipowner's base of operations." The facts that the vessel was owned by a Greek corporation which had its base of operation in New York, and more than 95 percent of the corporation's stock was owned by a Greek national who had resided in the United States for more than twenty years basically mandated the additional factor in *Rhoditis*. Nothing in this case indicates any American beneficial ownership; therefore, the "base of operations" factor does not apply.

In 1981, the Supreme Court refined *forum non conveniens* with *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–52, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The Court in *Reyno*, a products liability action in diversity, held that the choice of law analysis is not determinative of *forum non conveniens* issues.

> We do not hold that an unfavorable change in law should never be relevant to consideration in a *forum non conveniens inquiry*. Of course, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would *not be in* the interests of justice.

*Id.* at 254–55, 102 S.Ct. 252. *Reyno* reaffirmed the balancing of interests for *forum non conveniens* as originated in *Gulf Oil v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Id.* at 256–57, 102 S.Ct.

252. *See also Ullah v. Canion Shipping Co.*, 589 F.Supp. 552, 559 (1984), *aff'd* 755 F.2d 1116 (4th Cir.1985) (recognizing *Reyno* and *Gilbert* principles, but failing to state them even though the factors were applied). In addition to establishing an adequate alternative forum, the moving party must establish that the private and public interests weigh heavily on the side of trial in the foreign forum. *Reyno*, 454 U.S. at 255, 102 S.Ct. 252.

Prior to *Reyno*, the Fourth Circuit Court of Appeals addressed these issues on three occasions: *Heredia v. Davies*, 12 F.2d 500 (4th Cir.1926), *The Fletero v. Arias*, 206 F.2d 267 (4th Cir.1953), and *Gkiafis v. S. S. Yiosonas*, 387 F.2d 460 (4th Cir.1967). In *Heredia*, the court first stated that an American court has the discretion to retain jurisdiction over an admiralty personal injury action where the plaintiff and vessel were Peruvian, but the injury occurred on board the ship while docked in New York City. While the choice of law issue was decided in terms of pre-*Lauritzen* principles, the law of Peru was considered.

Again, the Fourth Circuit in *The Fletero* upheld the exercise of discretionary jurisdiction over a suit brought by an Argentine seaman, against an Argentine vessel and owner for personal injuries sustained while docked at the port of Norfolk, Virginia, together with a wage claim. In *The Fletero*:

> The injury occurred while the ship was tied up in the dock at Norfolk and the injured seaman was in a Norfolk hospital. A survey of the vessel had been made in Norfolk and the survey and other proofs were available there to establish the libellant's cause of action. The injured seaman had been discharged from the vessel without payment of a considerable balance of wages due him; and counsel whom he had employed lived in Norfolk and by their diligence had prepared the case so as to

(4) The allegiance of the defendant shipowner;

(5) The place of the contract (i.e., where the shipping articles were signed);

(6) The inaccessibility of a foreign forum; and

(7) The law of the forum.

establish his right to recover substantial damages.... Particularly is this true when to dismiss the case here would require libellant to pursue his rights in the courts of a foreign government which was seeking to defeat his recovery the [sic] moving for a dismissal of his case based on the grounds that government was the owner of the ship. To throw libellant out of court now would be to subject him to the grave danger of having the Argentine courts hold that his cause of action is barred by its one year statute of limitations.... At all event, we cannot say that, with these considerations before him, there was an abuse of discretion on the part of the District Judge in taking and holding jurisdiction of the case, even if it had involved nothing more that the claim for damages for personal injuries.

*Id.* at 270–71. In its discussion of *Lauritzen*'s possible effect on the Jones Act claim, the court focused on a quotation from *Lauritzen* used to justify its holding.

And so by comity it came to be generally understood among civilized nations that all matters of discipline, and all things done on board, which affected only the vessel, or those belonging to her, and did not involve the peace or dignity of the country, or the tranquility of the port, should be left to by the local government to be dealt with by the authorities of the nation to which the vessel belonged as the laws of that nation, or the interests of its commerce should require.

*Id.* at 273 (citations omitted). The court, however, declined to decide which law

*Lauritzen* would dictate to the Jones Act claim because liability for unseaworthiness was clearly established applying either U.S. or Argentine law.

Most recently, in *Gkiafis,* the court reversed in part the lower court's decision to decline jurisdiction where a Greek seaman on a Panamanian vessel owned by a Panamanian corporation whose entire stock was owned by Greek citizens sustained injuries while on board a vessel docked in the port of Baltimore. After a prolonged procedural history, the court basically ruled on *forum non conveniens* grounds stating that the district court had relied too heavily on the *Lauritzen* choice of law factors in declining jurisdiction. The court balanced additional factors—the quality of the ship's contacts to the United States and the locus of the cause of action. The court also relied on three other factors: the six year delay of adjudication, the lack of proof or assurance that the plaintiff would be allowed to proceed in Greece, and its mandatory jurisdiction over the wage claims. While these additional three factors do not apply to the facts of the STAR B incident, *Gkiafis* does stand for the proposition that the *Lauritzen* analysis alone is not determinative of jurisdiction.[4]

Although the Fourth Circuit has yet to clearly state its *forum non conveniens* analysis since *Reyno,* the Fifth Circuit in *Camejo v. Ocean Drilling & Exploration,* 838 F.2d 1374 (5th Cir.1988), replaced its prior two-prong admiralty forum non conveniens analysis which consisted of *Lauritzen* plus *Gilbert* with a pure *Reyno/Gilbert* balancing test.[5] *Id.* at 1378–80. This new

---

**4.** *See Kabadais v. Golden Union Shipping Co.,* 1996 WL 615980, 1996 A.M.C. 2137 (E.D.Va. 1996) (applying the analysis set forth in *Gkiafis*). The court declined jurisdiction where Greece was the proper forum for injuries sustained by a Greek seaman on a Greek owned ship in the Chesapeake, and the only contacts with Virginia were the locus of the accident and that the seaman received emergency medical care in Virginia (primary care occurred in Greece), *id.*

**5.** A defendant of course bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum ... This burden of persuasion runs to all elements of the *forum non conveniens* analysis. Therefore, the moving defendant must establish that an adequate and alternative forum exists as to all defendants if there are several. If the moving defendant carries this initial burden, it must also establish that the private and public interests weigh heavily on the side of trial in the foreign forum. *Camejo,* 838 F.2d at 1379–80.

test appears to clearly incorporate U.S. Supreme Court precedent.

The defendants rely on *Ullah v. Canion Shipping Co.*, 589 F.Supp. 552 (1984), *aff'd* 755 F.2d 1116 (4th Cir.1985) for their emphasis on *Lauritzen.* In *Ullah*, a Pakistani citizen sued a Liberian owner for injuries sustained while on board a ship in the port of Baltimore. The district court relied heavily on *Lauritzen* to find that Greek law would apply to the suit. The court went on to cite *Reyno* and *Gilbert* in the section entitled *forum non conveniens* and applied those factors without stating or listing them. This two-prong analysis, similar to that rejected by the Fifth Circuit, was approved in a short per curiam opinion by the Fourth Circuit. The facts of *Ullah* were that the plaintiff signed a choice of law .clause in his contract that Greek law in Greek courts would govern; two witnesses to the accident resided in Greece and Portuguese Goa; plaintiff and two other witnesses resided in Pakistan; there was no official Coast Guard investigation in Baltimore; and although the plaintiff was originally treated in Maryland, he was then under medical care in Pakistan. *Id.* at 559. "The United States has no substantial connection with this litigation other than the fortuitous event that the CONCORDIA ION was located in Baltimore at the time of the accident." *Id.*

In the spirit of the existing Supreme Court and Fourth Circuit precedent, the court will weigh choice of law under *Lauritzen*, the adequacy of Greece as an alternate forum, and the private and public interests at stake.

## A. Choice of Law under *Lauritzen*

■ As indicated by balancing the following factors, Greek law applies to the plaintiffs' claims. The two factors that favor U.S. law—the place of the accident and the law of the forum—carry the least weight in the *Lauritzen* balancing test.

The accident resulting in injuries to the plaintiffs took place in a U.S. port. The place of the wrongful act has traditionally been one of the least important of the factors; choice of law should not be determined on the basis of the fortuitous location of some common event. *Lauritzen,* 345 U.S. at 583–84, 73 S.Ct. 921; *see Ullah,* 589 F.Supp. at 556.

The STAR B is a Cyprus flagged vessel. The flag of the vessel is deemed one of the most significant choice of law factors. *See Lauritzen* 345 U.S. at 584, 73 S.Ct. 921; *see also Banegas v. United Brands Co.,* 663 F.Supp. 198 (D.S.C.1986) (dismissing an *in personam* action under *Lauritzen* ).

Both plaintiffs currently reside in Ghana. After one month of medical treatment in Charleston, they were repatriated to Ghana and have received a significant amount of medical care there. This factor favors neither the United States nor Greece.

The shipowner is a resident of Greece; the ship's manager, Baru Kaha, while organized under the laws of Liberia, has its operations and seat of business in Greece.

The place of contracting is given little or no weight in maritime choice of law determinations because in most instances the location is fortuitous, but choice of law expressed in the contract may be much more important. *Banegas,* 663 F.Supp. at 205. There are two contracts involved in this case. The first contained no forum selection clause and was signed in Singapore. The plaintiffs allege that the second contract was signed at sea. It contained a forum selection clause that assigned the law of Cyprus or Myanmar (formerly Burma).

With respect to accessibility of the forum, Greece would be more accessible to the defendants, while the United States would be equally inaccessible to both parties.

U.S. law is the law of the forum. Again this factor has been afforded little weight. *Ullah,* 589 F.Supp. at 556.

While at first glance there may appear to be a mélange of countries represented in the *Lauritzen* factors, by narrowing the fora to Greece, Cyprus (a Greek isle), the

United States, and Ghana, it is much more clear that the balance favors a Greek forum.

## B. The Adequacy of Greece as an Alternate Forum

However, the application of Greek law does not determine *forum non conveniens* without a finding that Greece is an adequate forum. *See Reyno,* 454 U.S. at 254–55, 102 S.Ct. 252. Two Greek attorneys provided by way of affidavit support for the conclusion that the Greek courts would take jurisdiction over this suit and apply Greek law. While the plaintiffs attempted to rebut this conclusion, the grounds for believing that the Greek courts will take jurisdiction are sound. However, out of caution, the court will condition its dismissal on the acceptance of jurisdiction by the Greek court and submission by the defendants to Greek jurisdiction.

The plaintiffs also argue that Greece is an inadequate forum because there is no *in rem* procedure in Greece. This is undisputed. Again, the court conditions its dismissal on the posting of an *in personam* security bond by the defendants as is provided for under Greek law. *See Warn v. M/Y Maridome,* 961 F.Supp. 1357 (S.D.Cal.1997). This will provide the plaintiffs with adequate protection from the release of *in rem* jurisdiction upon dismissal of this suit.

## C. The Balancing of Public and Private Interests

The court also considers the public and private interests balanced in *Gilbert.* None weigh so heavily as to require this to court to retain jurisdiction. The private interests include:

(1) Relative ease of access to sources of proof;

(2) Availability of compulsory process for attendance of the unwilling;

(3) The cost of obtaining attendance of witnesses;

(4) The possibility of viewing the premises;

(5) All other practical problems that make trial of a cause easy, expeditious and inexpensive; and,

(6) The effect on the enforceability of the judgment.

*Id.* at 508–09, 67 S.Ct. 839.

Witnesses from the Coast Guard investigation and Port of Charleston are located in the United States. It appears, however, that the Coast Guard witnesses would be prohibited from testifying due to a law prohibiting introduction of investigation reports in private civil actions. (See Reply Memo. pp. 7–8). The plaintiffs also assert the need for local medical witnesses who provided care at Charleston Memorial and MUSC for one month after the accident. Medical care was also provided to the plaintiffs in Ghana. It is true that travel to Greece for such witnesses would be burdensome, if not impossible, but convenience to witnesses fails to rise to the level of a determining private interest. Regardless of the forum, parties and witnesses will have to travel long distances to be present at trial or their testimony will need to be presented through depositions.

The plaintiffs also argue that they would be prejudiced in a Greek forum due to the lack of a negative inference based on spoilation of evidence. The plaintiffs contend that the lifeboat in question was intentionally disposed of to avoid a proper inspection and collection of evidence. Such spoilation, if proven, would permit a negative inference against the defendant in U.S. courts. The fact that such an inference does not exist in Greece is undisputed. Nevertheless, both parties were able to make a preliminary inspection of the lifeboat prior to the ship's departure from Charleston.

Finally, local interest is the only one of the three public interests that applies to the STAR B case.[6] The thrust of the

---

6. The other two interests considered in *Gilbert* were administrative difficulties of court congestion, and requiring jury duty of those not in any way related to subject matter or situs of the accident. *Id.* at 509, 67 S.Ct. 839.

plaintiffs' push for jurisdiction in the United States is the local interest in the safety and seaworthiness of vessels in the Port of Charleston. The plaintiffs rely on the Marine Safety Manual, created under authority vested in the U.S. Coast Guard pursuant to SOLAS, the Treaty on Safety of Life at Sea, which provides for the safety of vessels and the port. However, Greece is also a signatory of SOLAS and would have a similar interest in promoting and protecting the safety of ports, vessels, and seaman. Therefore, due to the lack of countervailing interests weighing heavily in favor of a U.S. forum, this case is dismissed consistent with the conditions set out in the preceding discussion.

## IV. CONCLUSION

It is, therefore,

**ORDERED,** for the foregoing reasons that the plaintiffs' motion to void the wage settlement is hereby denied, and the defendants' motion to dismiss for *forum non conveniens* is hereby granted provided that the conditions set out are met,

**AND IT IS SO ORDERED.**